UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND SMITH, *et al.*,

Plaintiffs,

Case No. 26-10014
U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

v.

JOI HARRIS, *et al.*,

Defendants.

______________________________/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [#6] AND DISMISSING PLAINTIFFS' STATE CONSTITUTIONAL CLAIM WITHOUT PREJUDICE**

## I. INTRODUCTION

Presently before the Court is Defendants' Motion to Dismiss [#6]. Upon review of the parties' submissions, the Court finds that oral argument will not aid in the disposition of the motion, and thus it will be decided on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, Defendants' motion to dismiss is GRANTED. The Court dismisses Plaintiffs' federal claims with prejudice for failure to state a claim upon which relief can be granted. Moreover, the Court declines to

exercise supplemental jurisdiction over Plaintiffs' state constitutional claim, and thus it is dismissed without prejudice.

## II. **BACKGROUND**

On January 5, 2026, Plaintiffs Raymond Smith and the Blackbottom Group, proceeding *pro se*, initiated this action against Defendants "DTE Energy/DTE Gas Company" ("DTE") and Joi Harris, Robert Richard, Katherine Lorenz, Renee Tomina, Evette Hollins, Bryan Valrance, and Dane Masse, all of whom are alleged employees or officers of DTE. According to the complaint, Mr. Smith operates multiple community and commercial ventures at a property located at 6357 East Jefferson Avenue in Detroit, Michigan ("the Property"). The Property also purportedly serves as the Blackbottom Group's headquarters.

In October 2025, Defendants allegedly commenced extensive excavation and infrastructure reconstruction immediately adjacent to and in front of the property as part of a "Natural Gas Renewal Program." According to Plaintiffs, this project required the complete excavation of the sidewalk, driveway, and parking-lot access points, which they contend are "the appurtenances of the property." ECF No. 1, PageID.3. In so doing, Plaintiffs assert, Defendants substantially restricted access to the Property and forced the suspension of all business operations on the Property. Plaintiffs contend that Defendants failed to provide them with the "industry-standard 30-to-90-day formal notice" of the project, including adequate notice of its

anticipated timeline, scope, and potential disruption. *Id.* at PageID.5. Plaintiffs further allege that Mr. Smith has a permanent physical disability that substantially limits his mobility. Despite Mr. Smith's disability and the public nature of the Property, Plaintiffs contend, Defendants failed to provide reasonable accommodations as required by law and failed to maintain an accessible route to and from the Property during construction.

Based on these allegations, Plaintiffs assert the following causes of action: (1) violation of Titles III and V of the Americans with Disabilities Act ("ADA"); (2) violation of the Michigan Persons With Disabilities Act ("PWDCRA; and (3) inverse condemnation in violation of Article 10, Section 2 of the Michigan Constitution and the Takings Clause of the Fifth Amendment to the United States Constitution. Defendants have moved to dismiss Plaintiffs' complaint.

## III. LAW AND ANALYSIS

### a. Dismissal Under Federal Rule of Civil Procedure 12(b)(5)

Defendants seek dismissal of Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(5) due to insufficient service of process. "Under Civil Rule 12(b)(5), a district court has broad discretion to dismiss a complaint for insufficiency of service of process." *HPIL Holding, Inc. v. Zhang*, 734 F. Supp. 3d 664, 694 (E.D. Mich. 2024) (citations omitted). Federal Rule of Civil Procedure 4 sets forth the requirements for service of process and expressly allows a plaintiff to effectuate

service in accordance with the law of the state in which the district court sits. Fed. R. Civ. P. 4(e)(1). In turn, the Michigan Court Rules provide that individual service may be effectuated by sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Mich. Ct. R. 2.105(A)(2). A private corporation can be served, in relevant part, by (1) serving a summons and a copy of the complaint on an officer of the corporation, or (2) serving a summons and a copy of the complaint on a director, trustee, or person in charge of an office of the corporation and sending the same by registered mail to the corporation's principal office. Mich. Ct. R. 2.105(D). Critically, the Michigan Court Rules provide that "[a]n action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within the time provided in these rules for service." Mich. Ct. R. 2.105(K)(3).

Here, Plaintiffs represent that they attempted to fulfill service of process by mailing each Defendant a copy of the complaint and summons to DTE's corporate headquarters through "pre-paid certified mail." ECF No. 10-1, PageID.214. It appears Plaintiffs did so in an effort to comply with Michigan's laws governing service of process. While Plaintiffs did not mechanically comply with the procedures set forth in the Michigan Court Rules, their efforts nevertheless gave Defendants notice of the action within the time provided in the Michigan Court Rules. This is evidenced by the fact that Defendants moved to dismiss this action within a month

of Plaintiffs filing their complaint. Accordingly, because the Michigan Court Rules prohibit the dismissal of an action for improper service in instances where the plaintiff's service efforts gave the defendant notice of the action within the time provided for service, the Court will decline to do so here. *See HPIL Holding Inc.*, 734 F. Supp. 3d at 694 (considering Mich. Ct. R. 2.105(K)(3) in adjudicating Rule 12(b)(5) motion to dismiss).

**b. Dismissal Under Federal Rule of Civil Procedure 12(b)(6)**

Next, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek dismissal of Plaintiffs' complaint for failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In adjudicating a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quotations omitted). Even so, the court "need not accept as true legal

conclusions or unwarranted factual inferences." *Treesh*, 487 F.3d at 476 (citation omitted).

For the reasons that follow, the Court finds that dismissal of Plaintiffs' complaint is appropriate. Plaintiffs' complaint, liberally construed, fails to state a federal claim upon which relief can be granted, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' inverse condemnation claim under the Michigan Constitution.

i. Plaintiffs' ADA and PWDCRA Claims

The Court finds that dismissal of Plaintiffs' ADA and PWDCRA claims is appropriate. First, Plaintiffs have not alleged facts sufficient to state a plausible claim of disability discrimination under Title III of the ADA. "To state a *prima facie* claim of discrimination under Title III of the ADA, a plaintiff must allege that (1) he or she is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff by denying them 'a full and fair opportunity to enjoy the services defendants provide.' " *Dad Delphine Alfred Found. for Deaf and Hard of Hearing v. Del. North Cos. Inc.*, 805 F. Supp. 3d 815, 820 (E.D. Mich. 2025) (citation omitted).

Here, Plaintiffs allege that Defendants "physically obstructed the appurtenances of the property," and that their "failure to maintain an accessible route

during construction is a direct violation of Title III federal standards." ECF No. 1, PageID.3. Although Plaintiffs do not expressly identify the relevant place of public accommodation, their reference to the Property's "appurtenances" appears to make the Property itself the alleged place of public accommodation. But Plaintiffs have not alleged that Defendants own, lease, or operate the Property. Instead, they contend that Mr. Smith operates businesses on the Property, and that the Property serves as the Blackbottom Group's headquarters. Thus, by their own allegations, Plaintiffs—not Defendants—operate the alleged place of public accommodation, thereby failing to satisfy the second element of their Title III claim. Dismissal of this claim is therefore warranted.

Second, Plaintiffs have not alleged facts sufficient to state a plausible anti-retaliation claim under Title V of the ADA. Title V's anti-retaliation provision provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b). The Sixth Circuit has recognized that this provision applies only to claims brought against an employer. *Post v. Trinity Health Mich.*, 44 F.4th 572, 579 (6th Cir. 2022). Here, Plaintiffs do not allege that they were employed by any of the Defendants. Therefore, they fail to allege a plausible anti-retaliation claim

under the ADA.

Lastly, Plaintiffs' complaint fails to state a plausible PWDCRA claim. As the Sixth Circuit has recognized, the PWDCRA " 'substantially mirrors the ADA,' so resolving an ADA claim will generally resolve a plaintiff's PWDCRA claim." *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 769 (6th Cir. 2025) (citation omitted). Given that the Court has found that Plaintiffs have failed to state a plausible ADA claim, it necessarily follows that Plaintiffs have also failed to allege a plausible PWDCRA claim.

For these reasons, the Court finds that dismissal of Plaintiffs' ADA and PWDCRA claims is appropriate.

ii. Plaintiffs' Federal Constitutional Claim

The Court also finds that dismissal of Plaintiffs' federal constitutional claim under the Takings Clause is appropriate. Title 42 U.S.C. § 1983 provides the necessary vehicle for individuals seeking to enforce federal constitutional rights against state actors. *Acklin v. City of Inkster*, 93 F. Supp. 3d 778, 789 (E.D. Mich. 2015) (citation omitted). "To recover under section 1983, the plaintiff must plead and prove two elements: (1) [he] suffered a deprivation of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law." *Savage v. City of Pontiac*, 743 F. Supp. 2d 678, 683 (E.D. Mich. 2010) (citing *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d

899, 902 (6th Cir. 2003)).

With respect to the state action element, it is axiomatic that private corporations and their employees generally do not act under the color of state law. *Constant v. DTE Elec. Co.*, No. 19-10339, 2020 WL 2836324, at *3 (E.D. Mich. May 31, 2020) (citations omitted). Thus, "[t]o hold a private entity such as DTE liable under 42 U.S.C. § 1983 for a violation of constitutional rights, plaintiffs must show that its actions are 'fairly attributable to the State.' " *Gala v. City of Fraser*, No. 16-cv-10147, 2018 WL 1792371, at *3 (E.D. Mich. Apr. 16, 2018) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)). The Sixth Circuit "has recognized as many as four tests to aid courts in determining whether challenged conduct is fairly attributable to the State: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test." *Marie v. Am. Red. Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (citations omitted).

With respect to the public function test, Plaintiffs argue that "[w]hen DTE exercises the state-delegated power of eminent domain or right-of-way access to overhaul 1,400 miles of pipe, they are performing a 'public function[.']" ECF No. 10-1, PageID.217. In so arguing, Plaintiffs appear to suggest that DTE's implementation of the Natural Gas Renewal Program, which involves the physical excavation of private property, constitutes an exercise of eminent domain.

Indeed, the public function test looks to whether defendants "exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Marie*, 771 F.3d at 362 (citations omitted). Here, however, Plaintiffs' complaint is devoid of facts reasonably suggesting that DTE exercised the State of Michigan's eminent domain power. The Court need not accept Plaintiffs' conclusory assertion to that effect because it is a legal conclusion, not a factual allegation. At most, Plaintiffs' allegations demonstrate that, in implementing the Natural Gas Renewal Program, DTE performed utility work. The Supreme Court has long recognized that the furnishing of utility functions is not a state function, even if the utility company is extensively regulated by the state. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974); *see also Sanford v. DTE Energy Co.*, No. 07-15451, 2009 WL 790496, at *1 (E.D. Mich. Mar. 20, 2009) (recognizing that while DTE "is a privately owned and operated utility subject to regulation by the Michigan Public Service Commission[,] . . . in providing utility services, Defendant has not engaged in the exercise of authority or action normally associated with state sovereignty").

Plaintiffs next invoke the entwinement test, asserting that DTE's conduct is fairly attributable to the State of Michigan because recent Michigan Public Service Commission "audits and 'Special Contract' approvals (such as those for large data centers) show an entwinement between the State of Michigan and DTE." ECF No.

10-1, PageID.218. To prevail under the entwinement test, Plaintiffs must show that DTE is "entwined with governmental policies or that the government is entwined in the private entity's management or control." *Marie*, 771 F.3d at 363 (cleaned up). "The crucial inquiry under the entwinement test is whether the nominally private character of the private entity is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings such that there is no substantial reason to claim unfairness in applying constitutional standards to it." *Id*. (cleaned up).

Plaintiffs' allegations do not meet these standards. The fact that the State of Michigan regulates DTE and has authorized it to implement the Gas Renewal Program does not establish the "pervasive entwinement" required to find that DTE acted under the color of state law. Nor do Plaintiffs' references to Michigan Public Service Commission audits and contract approvals demonstrate that public institutions and public officials are so pervasively involved in DTE's management or operations.

Plaintiffs also argue that the symbiotic relationship or nexus test is satisfied here because "the State of Michigan has delegated the essential function of gas infrastructure safety and modernization to DTE." ECF No. 10-1, PageID.216. As discussed above, however, the provision of utility services, which necessarily involves the maintenance and modernization of utility infrastructure, is not a

function traditionally reserved to the state. Therefore, DTE's provision of gas infrastructure safety and modernization does not amount to state action.

For these reasons, even liberally construing the complaint and accepting its allegations as true, Plaintiffs have not plausibly alleged that DTE acted under the color of state law when it allegedly deprived them of their constitutional rights under the Takings Clause. Plaintiffs' complaint also fails to plausibly allege that any of the individual Defendants acted under color of state law, as the complaint refers to "Defendants" collectively and fails to identify any specific conduct by the Individual Defendants. Accordingly, dismissal of Plaintiffs' federal constitutional claim is appropriate.

iii. Plaintiffs' State Constitutional Claim

Finally, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state constitutional claim. Title 28 U.S.C. § 1367(a) provides, in pertinent part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III.

Supplemental jurisdiction under Section 1367(a), however, "is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) (citation omitted). Section 1367(c) provides that a district court may

decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In interpreting Section 1367, the Sixth Circuit has recognized that "the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of" before trial. *See Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001); *see also Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991) (finding that only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial").

Here, the Court has federal question jurisdiction over the present case. The Court has dismissed all of Plaintiffs' federal claims and believes that Plaintiffs' remaining state constitutional claim will require significant interpretation and analysis that would be best handled by the Michigan state courts. Accordingly, the Court will employ its discretion under Section 1367(c) and decline to exercise supplemental jurisdiction over Plaintiffs' state constitutional claim. The Court will dismiss this claim without prejudice.

**c. Plaintiffs' Request for Leave to File a More Definite Statement or an Amended Complaint**

In their response, Plaintiffs seek leave to file "a More Definite Statement or an Amended Complaint" under Federal Rule of Civil Procedure 12(e) to incorporate

the following factual allegations in their complaint:

1. On or about August 1, 2025, DTE commenced gas line replacement on Meldrum Street as part of the Elmwood project located near plaintiffs place of business at 6357 East Jefferson as part of the 2025-2035 Gas Renewal Program.

2. Under DTE's published "Property Repairs & Restoration" guidelines, summer season repairs are mandated to be completed within 30 days of inception.

3. DTE, acting as a state actor under [Michigan Public Service Commission] authority, failed to provide [Plaintiffs] with any formal notice of the scope of construction, violating Ray Smith['s] ADA Civil Rights and [Plaintiffs'] Due Process rights.

4. The restoration was not completed until January 2026, a 150-day duration that exceeded the 30-day mandate by 400%, causing an undetermined financial amount in damages to Plaintiff's programs and services.

ECF No. 10-1, PageID.217, PageID.219. Rule 12(e), however, does not provide Plaintiffs with the avenue of relief they seek. Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Put another way, Rule 12(e) generally allows a defendant to obtain clarification of a complaint filed by a plaintiff. It does not provide a mechanism for a plaintiff to supplement or amend its own complaint.

Rather, Federal Rule of Civil Procedure 15(a) governs Plaintiffs' request and provides that leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a). Despite Rule 15(a)'s liberal standard, a court should deny leave if

the amendment "would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Harford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Here, Plaintiffs' proposed amendments would be futile. They do not demonstrate that Defendants own, lease, or operate the Property, as required for Plaintiffs' Title III claim, nor do they demonstrate that Plaintiffs were employed by Defendants, as required for the Title V claim. Nor do they support a plausible inference that, in engaging in the alleged acts giving rise to this action, DTE was performing a utilities function, which is not a state action as required to prevail on their federal constitutional claim. Therefore, these allegations would not withstand a Rule 12(b)(6) motion to dismiss. The Court will thus deny Plaintiffs' request for leave to amend their complaint.

## IV. CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is GRANTED. The Court dismisses Plaintiffs' federal claims with prejudice for failure to state a claim upon which relief can be granted. Moreover, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state constitutional claim, and thus it is dismissed without prejudice.

SO ORDERED.

Dated: August 21, 2026

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 21, 2026, by electronic and/or ordinary mail.

/s/ Marlena Williams
Case Manager